IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | Crim. Case No. CR-23-125-002-RAW |
| v. ) | |
| ) | Civ. Case No. CV-25-195-RAW |
| ROBERT LEE CATRON, ) | |
| ) | |
| Defendant/Movant. ) | |

## ORDER

Now before the court is the pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Robert Lee Catron ("Defendant"). [CR Doc. 91; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 99]. Defendant filed a reply. [CR Doc. 104]. This matter is ripe for ruling.

On November 8, 2023, Defendant pleaded guilty, pursuant to a written plea agreement, to one count of Aggravated Sexual Abuse in Indian Country in violation of 18 U.S.C. §§ 2241(c), 2246(2)(D), 1151, & 1153. [CR Doc. 59; CR Doc. 61]. Defendant appeared in person, and with appointed counsel, Mr. Ben Hilfiger, at the change of plea hearing. In addition, Mr. Matthew R. Price appeared pro bono on behalf of Defendant. The plea agreement included a waiver of certain appellate and post-conviction rights. [CR Doc. 61 at 4]. Defendant specifically waived "the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)." *Id*. Defendant also waived "the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel." *Id*. The plea agreement contained the following language on page 2:

FACTUAL BASIS FOR PLEA

The defendant agrees that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt, and that these facts accurately represent the defendant's provable offense conduct and specific offense characteristics:

> Beginning in or about July 2020, and continuing until in or about June 2022, I knowingly engaged in the following sexual acts before L.C. turned 12 years old:
>
> • Intentional touching, not through the clothing, of L.C.'s genitalia
>
> L.C. was in my care, custody, or supervisory control at the time of the sex act(s). I acknowledge that these acts constitute a pattern of activity involving prohibited sexual conduct.
>
> The sex act(s) occurred in the Eastern District of Oklahoma and in Indian Country. I was at the time of these acts, and I remain today, an enrolled member of the Cherokee Nation and an Indian for the purposes of jurisdiction.

*Id*. at 2.

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR noted that the child victim, L.C., was Defendant's son. [*PSR* at ¶ 69]. The PSR also showed that "[t]he entirety of the conduct comprising the instant offense occurred in the Eastern District of Oklahoma, within the territorial jurisdiction of the Cherokee Nation," and that "[a]t all times relevant to the offense conduct," Defendant and L.C. were enrolled members of the Cherokee Nation. *Id*. at ¶ 5. Based upon a total offense level of 42 and a criminal history category of I, the guideline imprisonment range was 360 months to life. *Id*. at ¶ 79. On June 11, 2024, Defendant was sentenced to 360 months of imprisonment, to be followed by a ten-year term of supervised release.[1] [CR Doc. 87]. Judgment was entered on June 12, 2024. [CR Doc. 88]. Defendant did not appeal.

Defendant's § 2255 motion was timely filed on June 9, 2025.[2] [CR Doc. 91]. Defendant claims in Ground One that counsel was ineffective for "failing to involve [Defendant] in the

---

[1] Defendant's girlfriend was a co-defendant in the case at hand. She pleaded guilty, pursuant to a written plea agreement, to one count of Coercion and Enticement in violation of 18 U.S.C. § 2422(b). She was sentenced to 120 months of imprisonment, to be followed by a five-year term of supervised release.

[2] A federal prisoner typically has one year from the date on which his conviction becomes final to file a motion for habeas corpus relief. *See* 28 U.S.C. § 2255(f)(1). Defendant's judgment of conviction became final on or about June 26, 2024, which was 14 days following the date his sentence was entered on June 12, 2024. *See United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006) ("If the defendant does not file an appeal, the criminal conviction becomes final upon the expiration of the time in which to take a direct criminal appeal."). Therefore, Defendant needed to file his § 2255 motion on or before June 26, 2025, for it to be timely under § 2255(f)(1).

2

decision to accept or reject plea offers and failing to inform [Defendant] of all plea offers." *Id*. at 4. He contends that counsel "failed to inform [Defendant] of the early initial plea agreements proposed and offered by the government which included a sentence less than 360 months [of] imprisonment." *Id*. In Ground Two, Defendant argues that counsel was ineffective for "failing to argue the disparity in the sentence given [Defendant] as opposed to his co-defendant . . . when each sentence was based on the same conduct." *Id*. at 5. Defendant also claims that "[c]ounsel assured [Defendant] that if he pleaded guilty he would not receive 30 years [of] imprisonment as a first-time offender, despite the statutory mandatory sentence that was applicable to his charged offense." [CR Doc. 91-1 at 3]. In Ground Three, Defendant claims the court lacked any "power or jurisdiction over him as a Cherokee Indian, and counsel was ineffective for failing to argue this issue, which ultimately prejudiced [Defendant]." *Id*. at 4.

In response, the Government contends that "Defendant avoids having his claims procedurally barred by citing ineffective assistance of counsel as the basis for each one." [CR Doc. 99 at 3]. The Government claims, however, that "Defendant fails to prove these claims at every turn." *Id*. The Government also asserts that the court "may properly deny Defendant's motion without an evidentiary hearing." *Id*. at 8.

As noted by the Government, Defendant's claims are based on ineffective assistance of counsel. The waiver in the plea agreement allows Defendant to pursue ineffective assistance of counsel claims in a collateral proceeding. The court will therefore address the merits of Defendant's ineffective assistance of counsel claims.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

> adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Defendant claims in Ground One that counsel was ineffective for "failing to involve [Defendant] in the decision to accept or reject plea offers and failing to inform [Defendant] of all plea offers." [CR Doc. 91 at 4]. He contends that counsel "failed to inform [Defendant] of the early initial plea agreements proposed and offered by the government which included a sentence less than 360 months [of] imprisonment." *Id*. The court is not persuaded.

The court has reviewed Defendant's sworn testimony before the Honorable Gerald L. Jackson at the change of plea hearing.[3] At one point, counsel for the Government was asked to "please state the nature of the charge against the Defendant to which he is pleading guilty" and the approximate range of punishment for the charge. Counsel for the Government noted that Defendant was pleading guilty to Count Two in the Indictment, and that Defendant was charged with Aggravated Sexual Abuse in Indian Country. Counsel for the Government specifically stated that the punishment for the crime was not less than 30 years of imprisonment and up to life.

---

[3] The change of plea hearing has not been transcribed, but the recording has been reviewed.

Defendant affirmed to Judge Jackson that he received a copy of the Indictment and had a chance to review it with his attorney. Defense counsel then affirmed that Defendant was ready to enter a plea at that time. Defendant was asked, "how do you plead to Count Two of the Indictment?" Defendant responded, "guilty."

Notably, Judge Jackson specifically asked defense counsel: "Mr. Hilfiger, were all formal plea offers made by the Government conveyed to the Defendant?" Mr. Hilfiger responded, "yes, your Honor." Defense counsel was then asked, "are the terms in this plea agreement the best offer made by the Government?" Mr. Hilfiger responded, "yes, your Honor." Mr. Hilfiger affirmed that he discussed all the terms of the plea agreement with his client.

In addition, counsel for the Government briefly summarized the terms of the plea agreement for the court. Counsel for the Government explained, that in exchange for the Defendant's guilty plea and the acceptance of responsibility, and Defendant's waiver of certain rights, the Government agreed to file a third-point motion. She further stated that the parties had stipulated that the total offense level, accounting for a three-level reduction for acceptance of responsibility, was 42; that Defendant's criminal history category was I; that the advisory range of imprisonment under the Guidelines was 360 months to life; and that the Government agreed not to object to a sentence at the low end of the applicable advisory guidelines range of imprisonment, provided that the stipulation does not constrain any victim in making an impact statement.

Judge Jackson specifically informed the Defendant "that Count Two is punishable by a term of imprisonment of not less than 30 years but up to life." Judge Jackson asked Defendant if he understood the nature of the offense and the possible punishment for the offense. Defendant stated, "yes." Defendant was asked, "has anyone, in any way, made any promises, representations, or guarantees to you, other than the terms in the plea agreement, to get you to plead guilty?" Defendant responded, "no."

At the end of the change of plea hearing, Judge Jackson asked, "Once again, Mr. Catron, how do you plead to Count Two of the Indictment?" Defendant responded, "guilty." Judge Jackson then stated, in part, that "based upon the Defendant's answers to my questions, his demeanor and clarity in his responses, the court finds in the case . . . that the Defendant is fully competent and capable of entering an informed plea and is aware of the nature of the charge and

5

the consequences of the plea. The court further finds the plea of guilty is a knowing and voluntary plea based upon the independent basis in fact containing each essential element of the offense charged. The plea is therefore accepted, and the Defendant is now adjudged guilty of the offense charged in Count Two of the Indictment."

Defendant now complains that "he was not informed of the early, initial plea offer that was proposed by the government" in which he could have pleaded guilty to a lesser charge and been sentenced to 15 years. [CR Doc. 91-1 at 3]. Defendant claims "[s]uch an initial offer was or had to be rejected by Mr. Hilfiger thereby throwing [Defendant] under the bus." *Id*. In response, the Government states that "[i]t appears Defendant predicates his belief on the fact that [his co-defendant] accepted a different plea offer and received a lighter sentence." [CR Doc. 99 at 5]. Be that as it may, the Government points out that Defendant "offers no other source" for the belief that a more favorable offer was made but not communicated by counsel to Defendant. *Id*. Indeed, Defendant provides no evidence, other than self-serving statements, in support of his claim.

Again, as noted above, Mr. Hilfiger affirmed at the change of plea hearing that all formal plea offers were conveyed to Defendant. Mr. Hilfiger was asked, "are the terms in this plea agreement the best offer made by the Government?" Mr. Hilfiger responded, "yes, your Honor." Defense counsel also affirmed that he discussed all the terms of the plea agreement with his client. Further, when summarizing the plea agreement, counsel for the Government stated, in relevant part, that the Government would not object to the imposition of a sentence at the low end of the Guideline range. Defendant was informed several times at the hearing that the punishment for the crime was *not less than 30 years of imprisonment* and up to life.

In its response, the Government informs the court that, "[a]s part of Defendant's plea agreement, the government agreed to not object to the imposition of a sentence at the low end of the Guideline range. That was the best offer the government ever made to Defendant." [CR Doc. 99 at 5]. Defendant has not demonstrated that the representation was deficient, and the court need not address whether the ineffective assistance claims would also fail under *Strickland*'s prejudice prong. Defendant's claims of ineffective assistance of counsel in Ground One must be denied.[4]

---

[4] Though not probative, within an email attached to the Government's response, Mr. Hilfiger claims Defendant was advised of the statutory minimum, that "[o]ne of the primary reasons he

In Ground Two, Defendant claims that "[c]ounsel assured [Defendant] that if he pleaded guilty he would not receive 30 years [of] imprisonment as a first-time offender, despite the statutory mandatory sentence that was applicable to his charged offense." [CR Doc. 91-1 at 3]. Once more, Defendant provides no evidence, other than self-serving statements, in support of his claim. The court is not persuaded.

Defendant's claim is undermined by the language of the plea agreement. [CR Doc. 61]. On page 13, above Defendant's signature, is the following language:

> ACKNOWLEDGMENTS
>
> My attorney has read this agreement to me and carefully reviewed every part of it with me. I fully understand it and I voluntarily agree to it without reservation. *No promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement and plea supplement.* I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it. I do this of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

*Id*. at 13 (emphasis added). At the bottom of that page, and above defense counsel's signature, is the following language:

> I am the defendant's counsel. I have carefully reviewed every part of this agreement with the defendant. The defendant's decision to enter into this agreement is an informed and voluntary one.

*Id*.

Furthermore, during his change of plea hearing, Defendant was asked, "has anyone, in any way, made any promises, representations, or guarantees to you, other than the terms in the plea agreement, to get you to plead guilty?" Defendant responded, "no." Ultimately, Defendant

---

pled was because he would receive the statutory minimum," and that Defendant "was fully aware and understood the statutory, mandatory minimum was 30 years and up to life." [CR Doc. 99-1 at 1]. Counsel reasserts that Defendant "was given all plea offers from the government," and "[t]he one he accepted and pled to was the best offer received from the government." *Id*.

pleaded guilty to Count Two of the Indictment even after being repeatedly informed that the punishment for the crime was not less than 30 years of imprisonment and up to life.

Defendant next argues in Ground Two that counsel was ineffective for "failing to argue the disparity in the sentence given [Defendant] as opposed to his co-defendant . . . when each sentence was based on the same conduct." [CR Doc. 91 at 5].

In response, the Government contends that "Defendant's contention has multiple flaws." [CR Doc. 99 at 6]. The Government points out that Defendant was charged with Aggravated Sexual Abuse in Indian Country. Unlike Defendant, however, the co-defendant was charged with Coercion and Enticement in violation of 18 U.S.C. § 2422(b) and Child Abuse in Indian Country in violation of 18 U.S.C. §§ 1151, 1153, & 21 O.S. § 843.5(A). Ultimately, the co-defendant pleaded guilty to one count of Coercion and Enticement in violation of 18 U.S.C. § 2422(b). The minimum term of imprisonment for Coercion and Enticement was 10 years, and the co-defendant was sentenced to 120 months of imprisonment. Clearly, as noted by the Government, a disparity argument by Mr. Hilfiger would have been pointless since the co-defendant "was charged with different crimes for different conduct."[5] *Id*. Next, the Government explains that "[m]ore importantly, by law, the Court had to impose a sentence of at least 30 years, so any argument from counsel for a lesser sentence would have been futile." *Id*. The Government also asserts that, "[s]ince Defendant received the lowest possible sentence allowed by law, it cannot be said that Defendant suffered any prejudice due to counsel's sentencing presentation." *Id*. The Government's arguments have merit. Defendant has failed to show that counsel was ineffective.

Lastly, in Ground Three, Defendant claims the court lacked any "power or jurisdiction over him as a Cherokee Indian, and counsel was ineffective for failing to argue this issue, which ultimately prejudiced [Defendant]." [CR Doc. 91-1 at 4]. In its response, the Government cites Supreme Court and Tenth Circuit precedent and asserts as follows:

> Defendant's argument is in direct opposition to long established federal law. The Major Crimes Act, with which Defendant was charged, provides that, within "the Indian country," "[a]ny Indian who commits" certain enumerated offenses "against the person or property of another Indian or any other person" "shall be

---

[5] The conduct of Defendant (and the co-defendant) is set forth in great detail in the PSR. [*PSR* at ¶¶ 5-41].

8

> subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a). The Supreme Court has upheld the constitutionality of the Major Crimes Act for well over a century. *United States v. Kagama,* 118 U.S. 375 (1886); *Keeble v. United States,* 412 U.S. 205, 205–06 (1973). The act permits the prosecution of sex abuse felonies committed by Indians in Indian Country. *United States v. Harjo*, 122 F.4th 1240, 1243 (10th Cir. 2024). And recognized members of the Cherokee Nation are Indians under federal law. *See Pacheco v. Habti*, 62 F.4th 1233, 1239 (10th Cir. 2023).
>
> The notion that this Court did not have subject matter jurisdiction over this case is contrary to the law and Defendant has offered no cognizable argument in support of his position. Statute and precedent absolutely foreclose this claim.

[CR Doc. 99 at 7].

Again, the court agrees with Government. The entirety of the conduct comprising the instant offense occurred in the Eastern District of Oklahoma, within the territorial jurisdiction of the Cherokee Nation, and Defendant and L.C. were enrolled members of the Cherokee Nation at all times relevant to the offense conduct. *PSR* at ¶ 5. Counsel was not ineffective for failing to argue that this court lacked any power or control over Defendant as a Cherokee Indian.

Defendant has not satisfied the *Strickland* test with respect to any of his claims of ineffective assistance of counsel.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that Defendant cannot meet either of these standards. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 91; CV Doc. 1] is hereby DENIED.[6] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 6th day of March, 2026.

*Ronald A. White*
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[6] The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.